Filed 5/12/16  Northern Cal. Presbyterian Homes and Services v. McInerney  CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| NORTHERN CALIFORNIA PRESBYTERIAN HOMES AND SERVICES, | H041335 (Santa Clara County Super. Ct. No. 1-14-CH005337) |
| Plaintiff and Respondent, | |
| v. | |
| JOSEPH McINERNEY, | |
| Defendant and Appellant. | |

Respondent Northern California Presbyterian Homes and Services (Presbyterian) owns Town Park Towers, an apartment complex where appellant Joseph McInerney lived until he was evicted in 2013.  In 2014, Presbyterian sought a workplace violence restraining order (Code Civ. Proc., § 527.8) against McInerney after he allegedly stalked and harassed Sandeep Virk, a security guard at Town Park Towers.[1]  After holding a hearing on the matter, the trial court granted Presbyterian's petition and issued a three-year injunction against McInerney, forbidding him from being 50 yards from Virk, her workplace, her home, and her vehicle.  McInerney, proceeding in propria persona, has appealed.  For the reasons set forth below, we affirm.

---

[1] Unspecified statutory references are to the Code of Civil Procedure.

BACKGROUND

On January 10, 2014, Presbyterian filed a petition for a workplace violence restraining order (§ 527.8) against McInerney. The petition alleged that Virk, a security guard at the Town Park Towers apartment complex, was in need of protection from McInerney because he was stalking and harassing her.

Attached to the petition was a signed declaration from Virk detailing the alleged harassment. Virk started working at Town Park Towers in 2009. Shortly after she began working at the apartment complex, McInerney started engaging in substantial unwelcome conduct towards her. At the time, McInerney was a tenant at the complex. Virk said that McInerney followed her, made suggestive comments to her, and took photos of her with his camera without her permission. McInerney would sometimes wait in the parking lot before she began her shift and would follow her into the offices. Town Park Towers began the process of evicting McInerney from his apartment in 2012, and Virk said that McInerney became less aggressive toward her after the eviction process began. Virk, however, recounted one incident where McInerney appeared at Town Park Towers, informed Virk that he was moving out, and then proceeded to take pictures of her even after Virk told him to stop. Virk called the police and an officer took McInerney away. Virk was unaware of any criminal proceedings that may have come from the incident. After he was evicted, McInerney came to the apartment complex twice and stared at Virk through the window for approximately 10 minutes until another employee asked him to leave. Another time, McInerney came by the apartment complex asking for Virk.

After Presbyterian filed its initial petition, the trial court granted its request for a temporary restraining order against McInerney and a hearing was scheduled. McInerney filed several oppositions to Presbyterian's section 527.8 petition.

The hearing on the petition was held on February 18, 2014. Virk was present at the hearing and testified that McInerney had been following her, staring at her, and

2

making inappropriate comments to her since she began working at Town Park Towers. Virk stated that McInerney's behavior had continued for about four years. In response to Virk's testimony, McInerney made a few arguments to the trial court, asserting that he did not believe that Virk's declaration was truthful.

Afterwards, the trial court granted Presbyterian's petition for a workplace violence restraining order and issued an injunction prohibiting McInerney from going within 50 yards of Town Park Towers and Virk for three years.

## DISCUSSION

### 1. *Briefs on Appeal*

First, we note that it appears that McInerney has filed two opening briefs. On August 4, 2015, McInerney filed a "Corrected Opening Brief." About a week later, on August 10, 2015, McInerney filed a "Corrected Opening Brief and Errata." This "Errata" contains a statement of facts, a summary of the applicable standard of review, and various summaries of arguments attacking the validity of the restraining order.

California Rules of Court, rule 8.200(a) provides that each appellant must serve and file an opening brief, each respondent must serve and file a respondent's brief, and each appellant may serve and file a reply brief. "No other brief may be filed except with the permission of the presiding justice" unless the cause is remanded to the appellate court from the Supreme Court, or if the appellate court grants an application to file an amicus curiae brief. (Cal. Rules of Court, rule 8.200(a)(4).)

McInerney did not seek leave to file a supplemental brief on appeal, and neither of the exceptions to the general rule that permission must be granted by the presiding justice are present. Second, his "Errata" appears to advance similar, if not the same, arguments as those in his "Corrected Opening Brief." Therefore, we decline to consider any arguments raised in his "Errata."

Additionally, even if we were to overlook the fact that McInerney's "Errata" violated the rule prohibiting parties from filing additional briefs without leave from the presiding justice, the arguments contained in the "Errata" do not contain citations to legal authority or legal analysis. They are merely summaries of what he believes the law holds.

"Where a point is merely asserted . . . without any argument of or authority for its proposition, it is deemed to be without foundation and requires no discussion." (*People v. Ham* (1970) 7 Cal.App.3d 768, 783, disapproved of on another ground in *People v. Compton* (1971) 6 Cal.3d 55, 60, fn. 3.) "An appellant must provide an argument and legal authority to support his contentions. This burden requires more than a mere assertion that the judgment is wrong. 'Issues do not have a life of their own: If they are not raised or supported by argument or citation to authority, [they are] . . . waived.' [Citation.] It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness. When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)

We acknowledge that McInerney is representing himself on appeal. However, he is not exempt from court rules. A party representing him or herself on appeal "is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys." (*Barton v. New United Motor Manufacturing, Inc.* (1996) 43 Cal.App.4th 1200, 1210.) Like represented litigants, McInerney must follow the appropriate appellate procedures. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247.) He fails to do so here. Accordingly, McInerney has waived any of the perfunctory arguments presented in his "Errata."

4

Unlike the "Errata," McInerney's "Corrected Opening Brief" contains some legal analysis.[2] We therefore address the merits of those claims. In so doing, we note that some of McInerney's arguments are perfunctory, and some of his other claims are incoherent. From what we can gather, McInerney claims the petition should not have been granted because: (1) the petition for a restraining order was not verified and Virk's signature on the attached declaration was invalid, (2) Virk was not joined as an indispensible party, (3) Virk's declaration was inadmissible hearsay, and he was not given an opportunity to cross-examine Virk, (4) there is no evidence he was stalking or harassing Virk, and (5) Presbyterian was required to post an undertaking before an injunction could issue.

2. *Overview of Section 527.8*

"Section 527.8, the Workplace Violence Safety Act, enables an employer to seek an injunction to prevent violence or threatened violence against its employees." (*City of San Jose v. Garbett* (2010) 190 Cal.App.4th 526, 536.) In pertinent part, section 527.8, subdivision (a) provides that "[a]ny employer, whose employee has suffered unlawful violence or a credible threat of violence from any individual, that can reasonably be construed to be carried out or to have been carried out at the workplace, may seek a

---

[2] Additionally, we note that McInerney's briefs on appeal contain derisive language directed toward Presbyterian's attorney, the trial court, and Virk. For example, McInerney's opening brief, referring to Presbyterian's counsel, states: "This is what this action is about as well as Virk taking counsel of trash, vermin, scum, malicious gossipers, and sewage . . . . They are not worth spitting on but there are other things I'd like to do to them in keeping with their degenerate and perverted self-worth. . . . I loath these weeds, they should be pulled up and burned. The trouble with Virk she has no sense of idenity [*sic*] that would protect her from this human disease. . . ." "There can be no doubt of the power of an appellate court to strike from its files a brief or other document containing disrespectful, scandalous, or abusive language directed against the courts, officials, or litigants, or to take such other action as the circumstances may require." (*Carpenter v. Pacific Mut. Life Ins. Co.* (1937) 10 Cal.2d 307, 314.) Despite some of the questionable language, we decline to exercise our discretion to strike McInerney's briefs.

temporary restraining order and an order after hearing on behalf of the employee and, at the discretion of the court, any number of other employees at the workplace, and, if appropriate, other employees at other workplaces of the employer."

3. *Defects with the Petition and Virk's Declaration*

McInerney argues that the petition filed under section 527.8 must be verified, and the trial court's order should be reversed since the petition submitted by Presbyterian was not verified. Construing his claim as an argument that the petition and the accompanying declaration had to be declared as true under penalty of perjury (§ 2015.5), we find his argument to be without merit. The record reflects that the petition was signed under penalty of perjury by the attorney representing Presbyterian. Virk's declaration was signed under penalty of perjury by Virk herself.

McInerney claims that Virk's signature, which does not legibly spell out her name, must be a fake. McInerney raised this same claim during the hearing on the petition. Since the court granted the petition, we infer that it made a factual finding that the signature was authentic and rejected McInerney's claim to the contrary.

We review a trial court's factual findings, express or implied, for substantial evidence. (*SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 462-463.) Aside from McInerney's unsubstantiated claim that Virk's signature is not genuine, there is no evidence to show that the signature was not authentic. Additionally, Virk provided testimony during the hearing that largely corroborated her declaration. We conclude that substantial evidence supports the trial court's implied finding that the signature was genuine.[3]

---

[3] In his "Errata," McInerney notes that Virk's declaration is erroneously titled "Declaration of Ken Yeung in Support of Motion." Ken Yeung is the public manager for Town Park Towers. This erroneous title appears to be a clerical error, because the declaration begins with "I, Sandeep Virk, declare as follows" and is signed by Virk.

*4. Indispensible Party Under Section 527.8*

McInerney insists that the trial court erred in granting the petition, because Virk was an indispensible party to the action and was not joined. McInerney is incorrect in his assessment. Section 527.8 allows *employers* whose employees have suffered unlawful violence or a credible threat of violence to file workplace violence petitions and obtain restraining orders on behalf of their employees. The party seeking the injunction was Presbyterian, not Virk. Presbyterian was not required to join Virk as a party, because her absence would not impair the court's ability to afford Presbyterian relief. (§ 389, subd. (a).)

5. *Use of Virk's Declaration and McInerney's Ability to Present His Case*

McInerney also argues that the court erred in considering Virk's declaration because it amounted to inadmissible hearsay. However, section 527.8, subdivision (j) specifically states that the trial court "shall receive any testimony that is relevant" during a hearing on a workplace violence petition. "The plain language of this provision suggests that the Legislature intended to permit a trial court to consider *all* relevant evidence, including hearsay evidence, when deciding whether to issue an injunction to prevent workplace violence pursuant to section 527.8." (*Kaiser Foundation Hospitals v. Wilson* (2011) 201 Cal.App.4th 550, 557 (*Kaiser*).)

"[I]njunctive proceedings under section 527.8 are intended to parallel those under section 527.6, which are procedurally truncated, expedited, and intended to provide quick relief to victims of civil harassment. [Citations.] Indeed, a proceeding for an injunction under section 527.6 (and, correspondingly, § 527.8), need not proceed as a 'full-fledged evidentiary hearing with oral testimony from all sides.' [Citation.] Rather, the hearing may be based on affidavits or declarations, which are themselves a form of hearsay evidence." (*Kaiser, supra*, 201 Cal.App.4th at p. 557.) Accordingly, even if Virk's declaration was considered hearsay, it was properly considered by the trial court.

7

McInerney maintains that the trial court limited his ability to present a defense by depriving him of the opportunity to cross-examine Virk during the hearing. We agree that although injunctive proceedings under section 527.8 are truncated, defendants are still afforded the right to present a case. "[T]he procedure for issuance of an injunction prohibiting harassment is self-contained. There is no full trial on the merits to follow the issuance of the injunction after the hearing provided by Code of Civil Procedure section 527.6, subdivision (d). That hearing therefore provides the only forum the defendant in a harassment proceeding will have to present his or her case. To limit a defendant's right to present evidence and cross-examine as respondents would have us do would run the real risk of denying such a defendant's due process rights, and would open the entire harassment procedure to the possibility of successful constitutional challenge on such grounds." (*Schraer v. Berkeley Property Owners' Assn.* (1989) 207 Cal.App.3d 719, 732-733.) The same reasoning applies to proceedings under section 527.8.

However, the record reflects that McInerney was not deprived of the chance to cross-examine Virk during the hearing. At one point during the hearing, McInerney asked the court if he could interrupt Virk while she was testifying. The trial court informed him that he could not interrupt, but that he would "have a chance to ask her [Virk] questions." After Virk finished testifying, McInerney argued a few points to the trial court, briefly addressing some of the arguments he had raised in the papers he had previously filed. At no point did McInerney request to cross-examine Virk. Nor did the trial court state that it would prohibit him from doing so. Based on these circumstances, McInerney was not denied the ability to fully present his case.

6. *Points and Authorities*

Next, McInerney claims that Presbyterian failed to serve him with points and authorities supporting its petition as required under the law. McInerney, however, is

8

incorrect that a petition under section 527.8 must be accompanied with a memorandum of points and authorities.

In his opening brief, McInerney cites to section 527, subdivision (d)(2) for the proposition that "[t]he party who obtained the temporary restraining order shall, within five days from the date the temporary restraining order is issued or two days prior to the hearing, whichever is earlier, serve on the opposing party . . . a copy of the points and authorities in support of the application." Section 527 governs the grant of preliminary injunctions and temporary restraining orders. It does not govern the procedure for obtaining a workplace violence restraining order under section 527.8.

Under section 527.8, subdivision (e), a petitioner must file a *declaration* that shows reasonable proof that an employee has suffered unlawful violence or a credible threat of violence and that great or irreparable harm would result to an employee in order to obtain a temporary restraining order. There is no requirement that a party seeking a temporary restraining order under section 527.8 serve on the opposing party a copy of points and authorities in support of the petition.

7. *Evidence Supporting the Section 527.8 Petition*

McInerney also claims that there is insufficient evidence to support the trial court's issuance of a workplace violence restraining order under section 527.8.

"On appeal . . . we review an injunction issued under section 527.8 to determine whether the necessary factual findings are supported by substantial evidence. [Citation.] Accordingly, we resolve all factual conflicts and questions of credibility in favor of the prevailing party, and draw all reasonable inferences in support of the trial court's findings." (*City of San Jose v. Garbett*, *supra*, 190 Cal.App.4th at p. 538.)

Section 527.8, subdivision (j) provides that "[i]f the judge finds by clear and convincing evidence that the respondent engaged in unlawful violence or made a credible threat of violence, an order shall issue prohibiting further unlawful violence or threats of

9

violence." Section 527.8, subdivision (b)(2) provides that a " '[c]redible threat of violence' " is defined as a "knowing and willful statement or course of conduct that would place a reasonable person in fear for his or her safety, or the safety of his or her immediate family, and that serves no legitimate purpose."

" 'Unlawful violence' " is defined as "any assault or battery, or stalking as prohibited in Section 646.9 of the Penal Code, but shall not include lawful acts of self-defense or defense of others." (§ 527.8, subd. (b)(7).) Penal Code section 646.9, subdivision (a) defines stalking in pertinent part as "[a]ny person who willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family is guilty of the crime of stalking."

" 'Credible threat of violence' " is defined as a "knowing and willful statement or course of conduct that would place a reasonable person in fear for his or her safety, or the safety of his or her immediate family, and that serves no legitimate purpose." (§ 527.8, subd. (b)(2).) " 'Course of conduct' " is defined as a "pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an employee to or from the place of work; entering the workplace; following an employee during hours of employment; making telephone calls to an employee; or sending correspondence to an employee by any means, including, but not limited to, the use of the public or private mails, interoffice mail, facsimile, or computer email." (§ 527.8, subd. (b)(1).)

In addition to the above, a petitioner "must establish by clear and convincing evidence . . . that great or irreparable harm would result to an employee if a prohibitory injunction were not issued due to the reasonable probability unlawful violence will occur in the future." (*Scripps Health v. Marin* (1999) 72 Cal.App.4th 324, 335.)

10

We find that there is sufficient evidence to support the court's conclusion that McInerney's acts constituted unlawful violence or a credible threat of violence and that it was reasonably probable that unlawful violence would occur in the future absent issuance of injunctive relief.

First, McInerney appears to argue that Presbyterian had to demonstrate that his acts constituted criminal threats under Penal Code section 422. There is no such requirement in the statute. Rather, a petitioner must establish that an individual either engaged in acts of unlawful violence or made credible threats of violence toward an employee, with "unlawful violence" being defined as any assault or battery, or stalking as prohibited by Penal Code section 646.9. (§ 527.8, subds. (b) & (j).)

Second, there was substantial evidence that McInerney engaged in unlawful violence and credible threats of violence as defined under the relevant statutes. Presbyterian submitted evidence that McInerney was following and harassing Virk for around four years and that his behavior amounted to criminal stalking under Penal Code section 646.9. Virk's declaration attested that McInerney waited for her in the parking lot, stared at her through the windows, took pictures of her without her permission, and made suggestive comments to her even though he was told to stop. In one incident, Virk called the police after McInerney refused to stop taking pictures of her. McInerney persisted in his attempt to contact Virk even after he was told by Presbyterian to stay away from the apartment complex. After his eviction, he came to the apartment complex and asked for Virk again.

Although there does not appear to be evidence that McInerney made a verbal threat to Virk, verbal threats are not necessary. Threats can be "implied by a pattern of conduct or a combination of verbal, written, or electronically communicated statements and conduct, made with the intent to place the person that is the target of the threat in reasonable fear for his or her safety or the safety of his or her family." (Pen. Code,

11

§ 646.9, subd. (g).) Given the repeated nature of McInerney's actions, there is substantial evidence to support a finding that McInerney's actions impliedly threatened Virk's safety.

There was also substantial evidence that Virk feared for her safety. Virk's declaration and her testimony at trial indicated that she was fearful and believed that McInerney was obsessed with her, given his past behavior. There was also substantial evidence that it was reasonably probable that unlawful violence would occur in the future absent an injunction. Virk's declaration and testimony asserted that McInerney persisted in his attempts to contact her even after he was evicted from Town Park Towers and after he was told that he could no longer come to the apartment complex.

In sum, there was sufficient evidence that McInerney's acts, which occurred over the course of approximately four years, constituted a course of conduct that warranted granting the injunction.

McInerney disagrees and claims that there is insufficient evidence, because Presbyterian did not submit evidence such as photographs or security tapes. Presbyterian also did not present witnesses aside from Virk. However, as we previously noted, proceedings under section 527.8 need not proceed as full evidentiary hearings and may be based on affidavits or declarations. (*Kaiser*, *supra*, 201 Cal.App.4th at p. 557.) Therefore, additional evidence was not necessary so long as the evidence that was presented was sufficient for the trial court to find by clear and convincing evidence that an injunction should issue. (§ 527.8, subd. (j).) In this case, we find that there was sufficient evidence to support the trial court's decision to issue the injunction under section 527.8.

8. *Requirement of an Undertaking*

Lastly, McInerney maintains that Presbyterian was required to post an undertaking under section 529 before the court could issue a workplace violence restraining order

12

under section 527.8.  This argument has no merit, because section 529 is not applicable in this case.

Section 529 provides in pertinent part that "[o]n granting an injunction, the court or judge must require an undertaking on the part of the applicant to the effect that the applicant will pay to the party enjoined any damages, not exceeding an amount to be specified, the party may sustain by reason of the injunction, if the court finally decides that the applicant was not entitled to the injunction."  In other words, section 529 requires an undertaking before a *preliminary injunction* may issue.  "The 'purpose of requiring security is to afford compensation to the party wrongly enjoined or restrained.' "  (*Top Cat Productions, Inc. v. Michael's Los Feliz* (2002) 102 Cal.App.4th 474, 478.)

Here, the trial court first issued a temporary restraining order after Presbyterian filed its petition.  "[A] TRO stands on a different statutory footing and can be valid in the absence of a posted security."  (*City of South San Francisco v. Cypress Lawn Cemetery Assn.* (1992) 11 Cal.App.4th 916, 920.)  Accordingly, an undertaking was not necessary when the temporary restraining order was issued.

Furthermore, the final workplace violence restraining order granted by the court followed a decision on the merits of the petition.  "It follows, that as the case has been tried on its merits and a permanent injunction has issued, there is no preliminary injunction upon which we may order any bond to be given."  (*Shahen v. Superior Court* (1941) 46 Cal.App.2d 187, 189.)  Since section 529's requirement of an undertaking is inapplicable to both temporary restraining orders and injunctions following a final decision on the merits, we fail to see how an undertaking would have been required here.

Additionally, section 527.8 does not specifically require an undertaking before a temporary restraining order or injunction may be issued.  Nor do we believe that posting of an undertaking would be appropriate.  As we have previously discussed, section 527.8, like section 527.6, is an expedited, truncated procedure meant to protect the victims of

13

harassment and to afford them with quick relief. (*Kaiser*, *supra*, 201 Cal.App.4th at p. 557.) Indeed, section 527.8, subdivision (w) specifically waives the requirement of a filing fee for petitions alleging that a person has stalked or inflicted violence on an employee. Requiring victims of harassment to post an undertaking would be contrary to the statute's intent.

9. *Respondent's Brief*

Lastly, we note that McInerney asserts in his reply brief that Presbyterian's respondent's brief should be stricken for its failure to comply with appellate rules and failure to address the issues raised in his opening brief. We disagree with McInerney's analysis. From our review, Presbyterian's brief conforms to rule 8.204 of the California Rules of Court and appropriately analyzes the arguments raised by McInerney in his opening brief.

## DISPOSITION

The order is affirmed. Northern California Presbyterian Homes and Services is entitled to its costs on appeal.

                                                    _____
                                                              Premo, J.



WE CONCUR:




_____
          Rushing, P.J.




_____
          Márquez, J.




<u>Northern California Presbyterian Homes and Services v. McInerney</u>
H041335